UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY MEEKS,

            Plaintiff                    Case No. 2:19-cv-10247
                                         District Judge Paul D. Borman
v.                                       Magistrate Judge Anthony P. Patti

JAMES WARNER and
DAVID GETTER,

            Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS (ECF No. 31) and DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 33)

**I.    RECOMMENDATION:**  The Court should **GRANT** Defendants Getter

and Warner's April 13, 2020 motion to the extent it seeks dismissal (ECF No. 31)

and **DENY** Plaintiff's May 7, 2020 motion for summary judgment (ECF No. 33).

**II.   REPORT:**

### A.    Background

Anthony Meeks (#176401) is currently incarcerated at the Michigan

Department of Corrections (MDOC) G. Robert Cotton Correctional Facility (JCF),

where he is serving a sentence imposed in state court on November 17, 1994.[1]  *See*

---

[1] *See* www.michigan.gov/corrections, "Offender Search," last visited Nov. 23,
2020.

Case No. 94-000467-01-FC (Wayne County).  Since then, in addition to the instant matter, Meeks has filed in this Court petitions for a writ of habeas corpus and prisoner civil rights cases, one of which is still pending.  *See Meeks v. Robinson* (Case No. 2:98-cv-74777-DPH (E.D. Mich.); *Meeks v. Bauman*, Case No. 2:15-cv-11821-LJM-EAS (E.D. Mich.); *Meeks v. Campbell, et al.*, Case No. 3:19-cv-10868-RHC-KGA (E.D. Mich.), and *Meeks v. Michigan Department of Corrections*, *et al*., Case No. 2:19-cv-12506-GCS-RSW (E.D. Mich.).

## B.    Instant Case

Meeks filed the instant case on January 24, 2019, while he was incarcerated at Michigan Reformatory (RMI), although the facts underlying this matter stem from the alleged events of February 2017 at Macomb Correctional Facility (MRF).  (ECF No. 1, PageID.5-9.)[2]  On February 19, 2019, the Court entered an opinion and order dismissing the complaint pursuant to 28 U.S.C. § 1915(g).  (ECF No. 5.)  However, in November 2019, the Sixth Circuit vacated the district court's order, remanded for further proceedings, and issued the mandate.  (ECF Nos. 11, 12.)

## C.    There are only two remaining, active Defendants.

---

[2] On March 13, 2020, I entered an opinion and order (ECF No. 26) construing Plaintiff's January 29, 2020 motion to expand the record (ECF No. 23) as a motion to supplement his complaint (ECF No. 1) with exhibits, which motion I granted in part and denied in part.

Meeks was permitted to proceed in this Court *in forma pauperis*. (ECF No. 13.) On December 11, 2019, the Court partially dismissed the complaint; it dismissed the case with prejudice as to several defendants but also provided that "[t]he case shall proceed against the remaining defendants, Sergeant Warner and Corrections Officer Gretten." (ECF No. 14).

Plaintiff's case was stayed and referred to the *Pro Se* Prisoner Early Mediation Program, and the Attorney General entered a limited appearance as to Warner and "Getter," which appears to be the correct spelling of this defendant's name. (ECF Nos. 15, 19.) Ultimately, on February 4, 2020, the Court entered an order granting Defendants' motion to exclude this case from the *Pro Se* Prisoner Early Mediation Program. (ECF Nos. 20-22.)

On February 6, 2020, Judge Borman referred this case to me for pretrial matters. (ECF No. 24.)[3] The U.S. Marshals Service facilitated service of this

---

[3] On or about February 6, 2020, while Plaintiff was incarcerated at JCF, Plaintiff mailed to the Court several certificates of service regarding various discovery requests he sent to defense counsel. (ECF No. 33, PageID.286-290.) He explained that, if Defendants failed to timely comply, he would like the Court to obtain the requested information and documents. (*Id.*, PageID.285.) However, discovery devices – such as interrogatories (Fed. R. Civ. P. 33), requests for production of documents (Fed. R. Civ. P. 34), and requests for admission (Fed. R. Civ. P. 36) – are only filed under certain circumstances. *See* E.D. Mich. LR 26.2 ("Filing Discovery Material"). Accordingly, Plaintiff's certificates of service were returned with the explanation that "[d]iscovery material is not filed with the Court." (*Id.*) *See also* E.D. Mich. LRs 37.1 ("Motion to Compel Discovery") and 37.2 ("Form of Discovery Motions"). By way of a letter dated May 6, 2020 – which was docketed as an attachment to Plaintiff's own motion for summary

lawsuit upon each of the Defendants, and, on April 13, 2020, Warner and Getter

appeared via counsel.  (ECF Nos. 25, 27-29.)

### D.    Pending Motions

Currently before the Court are two dispositive motions:  (1) Defendants

Getter and Warner's April 13, 2020 motion to dismiss or, in the alternative, for

summary judgment (ECF No. 31), regarding which a response and a reply have

been filed (ECF Nos. 32, 39, 40);[4] and, (2) Plaintiff's May 7, 2020 motion for

summary judgment (ECF No. 33),[5] which purports to be a response to Defendants'

dispositive motion and regarding which Defendants have filed a response (ECF

No. 34).

---

judgment – he sent the certificates back to the Court, seeking clarification of his
"mistake," and wondering if he lost his chance "to further . . . collect these
discovery documents . . . ."  (ECF No. 33, PageID.284.)  This appears to have
been addressed via Plaintiff's June 29, 2020 motion to compel discovery (ECF
No. 36), Defendants' response (ECF No. 38), and the Court's related order (ECF
No. 41).  As for Plaintiff's concerns about the prison system knowingly "leaving
out Exhibits," the Court is without sufficient information to consider this request;
nor is it clear whether Plaintiff is claiming that a request for counsel *in this Court*
did not make it onto the docket.  (ECF No. 33, PageID.284.)

[4] Plaintiff's response was due on May 15, 2020.  (ECF No. 32.)  Although the
response is post-marked and filed effective August 25, 2020, it was not entered on
the docket until October 2, 2020.  (ECF No. 39.)  In any event, it is grossly tardy
and will not be considered in substance.

[5] Although Plaintiff's motion for summary judgment is post-marked and filed
effective May 7, 2020, it was not entered on the docket until June 23, 2020.  (ECF
No. 33.)

4

Given the May 15, 2020 due date for Plaintiff's response to Defendants' dispositive motion (*see* ECF No. 32), Plaintiff's own May 7, 2020 dispositive motion seems to be a response thereto. Nonetheless, the Undersigned endeavors to report on each of these motions.

### E.    Discussion

#### 1.    The alleged February, March and April 2017 events

##### a.    MRF

By way of background, George Hudgens (#501569) – Meeks's bunkmate at MRF – was cited for a December 22, 2016 smuggling violation, which stemmed from Hudgens's same-day phone conversation with his son, Mario. (ECF No. 33, PageID.277.) Meeks contends that, on February 18, 2017, Warner and Getter searched Meeks and Hudgens's cell. (*Id.*; *see also* ECF No. 1, PageID.5.) According to Hudgens' misconduct hearing report, "a large amount of Marijuana" was in "Meeks['] area of control . . . ." (ECF No. 23, PageID.87; ECF No. 33, PageID.278.) Getter completed an MDOC Contraband Removal Record, which reflects that contraband was found behind the corkboard in a coat pocket. (ECF No. 31-4, PageID.198.) Getter reported these findings to Hearing Investigator Bridges by way of a February 19, 2017 MDOC Memorandum. (ECF No. 31-4, PageID.192.) The February 22, 2017 MDOC Hearing Investigation report indicates that Meeks requested Hudgens as a witness, although it also reflected that

the Hearing Investigator spoke with Hudgens, who allegedly stated, "I was not in the room, so I don't know what was in the room."  (ECF No. 31-4, PageID.191.)

This search lead to separate misconduct reports for the bunkmates.  On February 18, 2017, Getter issued Plaintiff a Class I Misconduct Report for substance abuse – marijuana.  (ECF No. 31-4, PageID.190.)  According to Meeks, he was found guilty on February 22, 2017; however, MDOC records reflect that the misconduct hearing took place on February 24, 2017.  (ECF No. 1, PageID.5-6; ECF No. 31-4, PageID.186, 188.)  Meeks was given 10 days detention and 30 days loss of privileges.  (*Id.*, PageID.188.)  *See also* Mich. Comp. Laws §§ 791.251-791.253, Mich. Admin. Code R 792.11903 ("Hearing and decisions.").  Meanwhile, on February 23, 2017, Inspector Robert Leduc wrote Hudgens a Class I misconduct for smuggling.  (ECF No. 33, PageID.277.)  Although Hudgens pleaded, "not guilty," on February 27, 2017, Hearing Office M. Szappan sustained the charge, found Hudgens guilty, and assessed 10 days of detention and 20 days loss of privileges.  (*Id.*, PageID.278.)

On March 1, 2017, seemingly as a result of Meeks's misconduct for *substance abuse*, Meeks was reclassified to Security Level IV, but the related MDOC Security Reclassification Notice lists a February 24, 2017 hearing on a charge of *smuggling* as the misconduct at issue.  (ECF No. 1, PageID.6; ECF No. 23, PageID.89; ECF No. 33, PageID.282.)  Meeks contends that he was not present

6

at the Security Classification Committee (SCC) hearing.  (ECF No. 23, PageID.81.)  According to Plaintiff, the SCC "forfeited 90 days from [his] prison sentence."  (ECF No. 1, PageID.6.)

At some point, Meeks wrote to Bridges to request a form to appeal the February 24, 2017 misconduct finding and to get information on appealing his March 1, 2017 Security Reclassification Notice.  (ECF No. 31-4, PageID.189.) Meeks sought another hearing, apparently to ensure that the basis for his reclassification was substance abuse, *i.e.*, *not* smuggling.  (ECF No. 1, PageID.6.) Plaintiff contends that the paperwork was fraudulently corrected and that he was denied another hearing.  (*Id.*)  As Meeks puts it, he received a 90-day penalty for smuggling, when he should have received only 10 days of detention for substance abuse; he spent an extra 21 days in segregation and detention; his security level was raised from a II to a IV; and, he was transferred to RMI.  (*Id.*)[6]

On March 14, 2017, Meeks filed a request for a rehearing on the February 24, 2017 MRF misconduct finding.  (ECF No. 1, PageID.6.; ECF No. 23, PageID.81-82; ECF No. 33, PageID.280.)  *See also* Mich. Comp. Laws § 791.254 ("Rehearing").

### b.    RMI

---

[6] Plaintiff claims he ended up in a Residential Treatment Program (RTP), although it is not clear whether this occurred at MRF or RMI.  (ECF No. 33, PageID.266.)

It seems that Plaintiff was transferred from MRF to RMI on March 28, 2017. (ECF No. 31-3, PageID.162.)  According to Plaintiff, Hudgens – then allegedly at RMI – provided an affidavit dated April 17, 2017, in which Hudgens contends, *inter alia*, that Meeks "had nothing to do with what I did."  (*Id*., at PageID.6; ECF No. 23, PageID.88; ECF No. 33, PageID.279.)

Meeks sent copies of Hudgens's misconduct hearing report and/or Hudgens's affidavit to the Hearing Administrator / Rehearing Appeal Division. (*Id*., PageID.6, 82.)  On April 28, 2017, Richard Russell denied the request, explaining, in part:  "After careful consideration of the evidence presented, there is sufficient[,] competent, material and substantial evidence on the record to support the Hearing Officer's findings that prisoner Meeks was in unauthorized possession of marijuana."  (ECF No. 33, PageID.280-281.)

### 2.    Plaintiff's efforts for review in state court

#### a.    Case No. 17-000557-AA (Ingham County)

Mich. Comp. Laws § 791.255 provides for judicial review of MDOC Hearings Division decisions or orders.  "[A]n application for direct review in the circuit court" may be filed "[w]ithin 60 days after the date of delivery or mailing of notice of the decision on the motion or application for the rehearing, if the motion or application is denied . . . ."  Mich. Comp. Laws § 791.255(2).  Thus, it seems

that an application for direct review of the April 28, 2017 decision would have been due on or about June 27, 2017.

Plaintiff was determined to prove his innocence.  (ECF No. 1, PageID.6.) On July 25, 2017, Meeks appealed to the Ingham County Circuit Court by filing a complaint.  *Meeks v. MDOC*, Case No. 17-000557-AA (Ingham County).  On August 23, 2017, the Court issued an order requiring Meeks to "submit an affidavit disclosing the specific date the April 28, 2017 decision was delivered to him" or otherwise "show cause why this case should not be dismissed as untimely filed."  It appears Plaintiff did so in August or September 2017.

Nonetheless, on September 29, 2017, the appeal was dismissed pursuant to M.C.R. 7.113 ("Dismissal") for appellant's failure to pursue this appeal in conformity with court rules, which, according to Meeks, were subsections of M.C.R. 7.104 ("Filing Appeal of Right").  (*Id*.; *see also* ECF No. 23, PageID.82.) Meeks's motions for reconsideration and reinstatement were denied on October 23, 2017.  On October 26, 2017, the state circuit court denied Meeks's motions for an application for interlocutory appeal and to amend for reconsideration for reinstatement.  Then, on November 13, 2017, the state circuit court denied his application for leave to appeal.

### b.    Case No. 341615 (Mich. App.)

Meeks filed a claim of appeal with the Michigan Court of Appeals on

December 18, 2017. *Meeks v. MDOC*, Case No. 341615 (Mich. App.)  On January

31, 2018, the Michigan Court of Appeals dismissed Meeks's claim of appeal for

lack of jurisdiction and explained:

> . . . the November 13, 2017 order of the circuit court on appeal from
> another tribunal is not appealable as a matter of right.  MCR
> 7.203(A)(l )(a).  At this time, appellant may seek to appeal that order
> by filing a delayed application for leave to appeal under MCR
> 7.205(G).

(*Id*.)  On March 30, 2018, the Court of Appeals denied the motion for

reconsideration and explained:

> Appellant has not established that a Department of Corrections
> hearing officer in a prison discipline case does not constitute a
> tribunal within the meaning of MCR 7.203(A)(l)(a).  Further, MCL
> 791.254 regards rehearing within the Department of Corrections.  It
> does not provide for an appeal of right to this Court.

(*Id*.)

### c.    Case No. 343250 (Mich. App.)

On April 10, 2018, Meeks filed a delayed application for leave to appeal the

November 13, 2017 order. *Meeks v. MDOC*, Case No. 343250 (Mich. App.).  On

October 25, 2018, the Michigan Court of Appeals granted the motion to extend the

time to cure his filing defects but denied the delayed application for leave to appeal

for lack of merit in the grounds presented.  (*Id*.)  It seems that Meeks's motion for

reconsideration was returned as late, *i.e.*, it was due on November 15, 2018 but was filed on November 19, 2018.  (*Id*.)

On November 30, 2018, the Court of Appeals received Meeks's correspondence maintaining that he had timely filed.  (*Id*.)  However, a letter dated December 21, 2018, seemingly from the Michigan Supreme Court, explained that the application was received too late.  (*Id*.)[7]

### d.   Case No. 347871 (Mich. App.)

On March 4, 2019, Plaintiff filed a delayed application for leave to appeal, which seemingly concerned a May 3, 2018 letter from an Ingham County Circuit Court law clerk.  On April 16, 2019, the Court of Appeals dismissed the delayed application for leave to appeal for lack of jurisdiction, and, on June 12, 2019, the motion for reconsideration was denied. Case No. 347871 (Mich. App.).  On July 29, 2019, the Michigan Supreme Court denied Meeks's application for leave to appeal the April 16, 2019 order. Case No. 159551 (Mich.).

### e.   This Court's jurisdiction

Plaintiff discusses the Ingham County and Michigan Court of Appeals cases at length in his complaint, and appears to seek some type of review of his state

---

[7] There is no corresponding Michigan Supreme Court, *i.e.*, "Mich.," case number. The Mich. App. Docket for 343250 simply says, "MSC ltr: Application rec'd too late. Papers returned."  *See* https://courts.michigan.gov/opinions_orders/case_search/Pages/default.aspx?SearchType=1&CaseNumber=343250&CourtType_CaseNumber=2.

court appellate litigation at points in his Prayer for Relief. (ECF No. 1, PageID.6-8, 10.) However, "[t]he *Rooker–Feldman* doctrine prevents a federal court from exercising jurisdiction over a claim alleging error in a state court decision." *Riser v. Schnieder*, 37 F. App'x 763, 764 (6th Cir. 2002).

### 3.   Plaintiff's claims in this Court

Plaintiff filed this lawsuit in January 2019, bringing claims against multiple MDOC Defendants, including Warner and Getter in their personal and official capacities. (ECF No. 1, PageID.3.) Meeks bases his claims on: (a) the First Amendment, presumably his right "to petition the Government for a redress of grievances[;]" (b) the Sixth Amendment, presumably his rights "to be confronted with the witnesses against him[,]" and "to have compulsory process for obtaining witnesses in his favor[;]" and, (c) the Fourteenth Amendment, namely his right to "due process of law[.]" (ECF No. 1, PageID.5.)

Plaintiff's prayer for relief requests that the Court conduct an evidentiary hearing, mainly to complete a list of fact-finding missions but also, *inter alia*, to compensate Plaintiff, restore the forfeited 90 days, and, seemingly, to permit rehearing on the misconduct report and/or review on the merits by Ingham County Circuit Court. (ECF No. 1, PageID.5, 9-10; *see also* ECF No. 23, PageID.86.)

### a.   Whether Plaintiff has stated a claim against Warner or Getter upon which relief may be granted?

To be clear, the Court's December 11, 2019 opinion and order of partial dismissal explains that "Plaintiff states a potential claim for relief" against Warner and Getter, particularly finding: "Plaintiff's claim that [Warner and Getter] filed a false prison misconduct ticket against him leading to the loss of disciplinary credits states a claim for relief under § 1983." (ECF No. 14, PageID.62) (citing *Thomas v. Eby*, 481 F.3d 434, 439-440 (6th Cir. 2007)). Nearly four months later, Defendants argue that Meeks "fails to state a claim" against them. (ECF No. 31, PageID.120.)

"A pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also "grounds" on which the claim rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 677-680 (2009).

In Defendants' view, "it is unclear from the complaint what Meeks' theory of recovery is." (ECF No. 31, PageID.121.) They speculate whether Plaintiff is alleging that Warner and Getter "retaliated against him," "planted the marijuana found in his possession," or "engaged in some other acts of misconduct during the search of his cell and the subsequent issuance of the misconduct ticket." (*Id*.)

Plaintiff's own motion for summary judgment, which he characterizes as a response to Defendants' motion for summary judgment, sheds light on his intentions.  To be sure, Plaintiff clarifies that he "never claim[ed] any type of retaliation or claim[ed] the Defendants put drugs marijuana in the cell . . . [.]" (ECF No. 33, PageID.265.)  Instead, looking to the operative pleading's "statement of claims" – which mentions the First, Sixth and Fourteenth Amendments – it seems that Plaintiff is generally taking issue with the process he received once the drugs were discovered, *e.g.*, not being heard and allegedly withheld evidence. (ECF No. 1, PageID.5)  Still, as discussed below, the Court should conclude that Plaintiff's *complaint* does not provide "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" with respect to Defendants Warner and Getter.  Fed. R. Civ. P. 8(a)(2).

First, Plaintiff's evidence-based explanations are not fruitful as to Defendants Warner and Getter.  Obviously, Getter completed the misconduct report and Warner reviewed it.  (ECF No. 31-4, PageID.190.)  *See also* MDOC PD 03.03.105 ¶¶ A-K (effective April 9, 2012) (ECF No. 31-6).  Yet, Plaintiff contends that his "First and Fourteenth Amendment rights to Due Process" were violated, as he did not "have all the investigation evidences presented of his MDOC Class One Major Misconduct Report."  (ECF No. 33, PageID.259; *see also id.*, PageID.267.)  If Plaintiff's claim is not based on retaliation, and speculating

that Plaintiff's due process claim might be that "he did not have an opportunity to present exonerating evidence at the misconduct hearing," the Court agrees with Defendants that, at least with respect to the "statement of facts" and "statement of claims" portions of Plaintiff's complaint (ECF No. 1, PageID.5-9), "nothing . . . suggests that Getter or Warner had any involvement in the decision to *exclude* such evidence." (ECF No. 34, PageID.294-295 (emphasis added).) Stated otherwise, the complaint does not suggest that either Warner or Getter, who were not adjudicators, "had any involvement in the decisions regarding evidence made during . . . the misconduct hearing itself." (ECF No. 34, PageID.295.) And, while Plaintiff alleges that an Inspector sent Warner and Getter to the cell and that Warner and Getter shook down his cell, Plaintiff does not seem to allege that Warner and Getter were involved in any obstruction with respect to the February 18, 2017 misconduct, the February 24, 2017 hearing, or the March 14, 2017 request for rehearing. (ECF No. 1, PageID.5-6.) This is buttressed by Plaintiff's prayer for relief, which questions what Warner and Getter were told to look for (and by whom) when they went to Plaintiff's cell. (ECF No. 1, PageID.5, 9-10.) Moreover, the prayer for relief seeks an evidentiary hearing to explore an extensive list of issues, questions, etc. (*id*.), and, to the extent these matters concern any Defendant who was not named or who was named but has since been dismissed,

the use of a federal lawsuit for the purpose of identifying and obtaining discovery against non-parties is improper.

Plaintiff also addresses the *strength* of the evidence. Seemingly referencing that "Fourteenth Amendment substantive due process requirements are applicable to disciplinary proceedings[,]" *McDonnell v. Wolff*, 483 F.2d 1059, 1062 (8th Cir. 1973), *aff'd in part*, *rev'd in part*, 418 U.S. 539 (1974), Plaintiff seeks rehearing on his misconduct ticket, contending that there is enough evidence to prove his innocence. (ECF No. 33, PageID.264.) Plaintiff points out that Hudgens has "admitted to putting the drugs in the cell[,]" and contends that Defendants are leaving out evidence and documents of their investigation, including matters before the February 18, 2017 search, such as the name of or information from Informant A – who allegedly told officials that Hudgens was bringing drugs into MRF – or evidence from the Michigan State Police's investigation. (*Id.*) Plaintiff's motion describes a "due process" argument, alleging that "Defendants failed to show that . . . [he] had anything to do with the drugs that w[ere] found in . . . [the] two man cell." (ECF No. 33, PageID.266; *see also id.*, PageID.267.) He even argues that there is a "factual dispute" currently before the Court, as Defendants are denying him information he seeks and withholding information pertinent to summary

judgment.[8]  (ECF No. 33, PageID.269.)  While the Informant's statement does not

seem to be in the record of this case, Plaintiff has submitted many of these items

(ECF No. 23, PageID.88-89; ECF No. 33, PageID.277-282), and the Court can

take judicial notice of the state court dockets, as well as the authority Plaintiff

claims he was not permitted to copy at JCF.  More to the point, to the extent

Plaintiff alleges that Defendants are withholding evidence from this Court, such a

claim is not relevant where, as here, the issue is "[w]hether Plaintiff has stated a

claim against Warner or Getter upon which relief may be granted?"  Fed. R. Civ. P.

12(b)(6).  How Defendants Warner or Getter are involved with the strength of the

evidence, allegedly in Plaintiff's favor, is unclear from the operative pleading's

"statement of facts" and "statement of claims."  (ECF No. 1, PageID.5-9.)

Second, Plaintiff's arguments about other individuals are also unavailing.

Pointing out that he originally named multiple defendants, "[b]ut the Court felt the

two officer[s] [who] wrote the misconduct [we]re the only one[s] liable . . . [,]"

Plaintiff claims that Warner and Getter "did not act alon[e] . . . ."  (ECF No. 33,

PageID.265.)  To be specific, the Court's December 11, 2019 order dismissed

MDOC Director Washington and MRF Warden Doe "because plaintiff failed to

---

[8] *E.g.,* the Informant's statement, Hudgens's February 23, 2017 misconduct for
smuggling, Plaintiff's March 1, 2017 Security Reclassification Notice, Plaintiff's
March 14, 2017 request for rehearing, Hudgens's April 17, 2017 affidavit,
information related to his attempts to exhaust in state court, Mich. Comp. Laws §§
791.251-791.253, or Mich. Admin. Code R 792.11903.

allege any personal involvement by these defendants in the alleged

unconstitutional deprivation[,]" dismissed Hearing Investigator Bridges and

Hearing Administrator Russell on immunity bases, and dismissed Assistant Deputy

Warden Jenkins-Grant, OPT Unit Chief Levine, and Resident Unit Manager

Greason – each of whom signed Plaintiff's Security Reclassification Notice as an

SCC Member – for failure to state a claim upon which relief can be granted.  (ECF

No. 14, PageID.59-62.)[9]  If Plaintiff sought to contest this order, he ought to have

moved for reconsideration within 14 days or sought to file a timely interlocutory

appeal.  *See* E.D. Mich. L.R. 7.1(h)(1); Fed. R. App. P. 5.

Relatedly, Plaintiff cites two cases for their commentary on subordinate or

policy/decision maker liability, although these references are inaccurate or

inapplicable, in one way or another.  *See Bean v. Monroe*, No. 2:04-CV-230, 2006

WL 625864, at *6 (W.D. Mich. Mar. 9, 2006) ("Supervisory officials can be held

liable for the acts of their subordinates only if plaintiff establishes that the

supervisor failed to appropriately discharge his supervisory duties, and that this

failure resulted in a denial or deprivation of plaintiff's federal rights.") and *Moore*

*v. Warren*, No. 13-CV-11831, 2013 WL 6817307, at *7 (E.D. Mich. Dec. 24,

---

[9] This would include Plaintiff's apparent contention that Russell arrived at his
April 28, 2017 decision even though Plaintiff had submitted the April 17, 2017
affidavit.  (ECF No. 33, PageID.269, 280-281.)  (*See also* ECF No. 1, PageID.6;
ECF No. 23, PageID.82.)

2013) (wherein Plaintiff Moore proposed that "[o]fficials who set policy, write regulations or give orders may be liable [under § 1983] even if they are not directly involved in enforcing them against a prisoner."). (ECF No. 33, PageID.266-267.)[10] However, "[i]n a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal*, 556 U.S. at 677.  Moreover, these cases seem inapposite here, where the remaining Defendants – Warner and Getter – are not described as supervisors.

Third, Plaintiff's suggestion of Defendants' ill-intent is not set forth within Plaintiff's operative pleading, *i.e.*, his complaint.  True, Plaintiff's motion for summary judgment contends that when Defendants went to the cell, they knew who the suspect was – presumably Plaintiff's cellmate, Hudgens – and the object of their search – presumably the contraband/drugs Hudgens was alleged to have

---

[10] It is unclear to the Court why Plaintiff is relying upon Eighth Amendment cases, such as *Estelle v. Gamble*, 429 U.S. 97 (1976); *Santiago v. Ringle*, 734 F.3d 585, 590-591 (6th Cir. 2013); and *Farmer v. Brennan*, 511 U.S. 825, 825 (1994). (ECF No. 33, PageID.266-267, 269.)  It is also unclear why Plaintiff is relying upon *Whitley v. Albers*, 475 U.S. 327 (1986), when the instant matter does not involve use of force.  (ECF No. 33, PageID.269.)  *See Whitley*, 475 U.S. at 327 ("We think the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners in cases such as this one, where the deliberate use of force is challenged as excessive and unjustified.").

smuggled into MRF; yet, they wrote an innocent prisoner a misconduct ticket, which resulted in harm.  (ECF No. 33, PageID.266.)  Plaintiff supports his claim of innocence by pointing to Hudgens's February 23, 2017 misconduct, Hudgens's February 27, 2017 guilty finding, Hudgens's April 17, 2017 affidavit, and Plaintiff's own declaration – presumably the one dated May 6, 2020 (ECF No. 33, PageID.270-272), and Plaintiff even represents that he "took a drug test and came back clean[.]"  (*Id*., PageID.268.)  Plaintiff seems to claim that, when Warner and Getter were sent to the cell, they "knew plaintiff had nothing to do with the drugs[,]" "knew what was in the cell and who it belong[ed] to[,]" and knew "the risk of writing a misconduct on a[n] innocen[t] prisoner and what punishment [wa]s ahead."  (*Id*.)  Perhaps Plaintiff is suggesting that Defendants Warner and Getter had a duty to investigate.  (ECF No. 33, PageID.268.)  In support, Plaintiff cites a non-binding case –  which has never been cited by the Court of Appeals for the Sixth Circuit or in this District – wherein the Ninth Circuit considered "whether the prison officials failed to perform a clearly established duty that they were required to perform in order to protect the Constitutional rights of the plaintiff and others like him." *Alexander v. Perrill*, 916 F.2d 1392, 1396 (9th Cir. 1990).

But, even assuming, *arguendo*, that they issued the major misconduct "without thinking about the harm" they would cause (*id*.), the Court agrees that Meeks's complaint does not "state how Warner and Getter engaged in any conduct

which violated his rights to due process." (ECF No. 34, PageID.294.) True, the

Court holds *pro se* complaints to "less stringent standards than formal pleadings

drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless,

"courts may not rewrite a complaint to include claims that were never presented,

nor may courts construct the Plaintiff's legal arguments for him. Neither may the

Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595

F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., *adopting report and*

*recommendation of* Binder, M.J.) (internal citations omitted). *See also, Evans v.*

*Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at \*2 (E.D.

Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules

8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements,

including Rule 12(b)(6)."). "The well-pleaded complaint rule generally provides

that the plaintiff is the master of his complaint," *Alexander v. Elec. Data Sys.*

*Corp.*, 13 F.3d 940, 943 (6th Cir. 1994), and, whatever other claims Plaintiff may

have against Defendants Warner and Getter, the Court need only consider those set

forth in Plaintiff's initiating, operative complaint. *See also* Fed. R. Civ. P. 8(a)(2)

and *Roddy v. Grand Trunk W. R.R., Inc.*, 395 F.3d 318, 322 (6th Cir. 2005) (a

plaintiff is "the master of his complaint.")

Finally, it is worth noting that Plaintiff seeks the right to appeal his

misconduct decision in accordance with Mich. Comp. Laws §§ 791.251-256, Mich.

Admin. Code R 792.11903, and MDOC PD 03.03.105 ("Prisoner Discipline").
(ECF No. 33, PageID.261; *see also* ECF No. 31-6.)  However, whatever
involvement Warner and Getter did have in the February 18, 2017 cell search at
MRF or the resulting investigation and hearing as to substance abuse, it is not at all
clear how they could be responsible for occurrences following Hearing Officer
Szappan's February 24, 2017 decision (ECF No. 31-4, PageID.188), whether it is a
request for rehearing of that decision or a challenge to or appeal of the March 1,
2017 SCC decision, let alone have responsibility for anything Meeks experienced
following his apparent March 28, 2017 transfer to RMI.

In the end, Plaintiff has clarified that his claims are not based on retaliation
or planting marijuana in his cell (ECF No. 33, PageID.265); rather, his claims are
based upon the process he received once the drugs were discovered, whether
related to his February 24th misconduct hearing, his March 1st SCC review, or an
appeal of either decision.  However, Plaintiff's pleadings do not make any
allegations that either of these defendants engaged in any actual wrong-doing in
issuing the misconduct ticket, even if they turned out be wrong.  Though Warner
and Getter may have been personally involved in the search and seizure of the
marijuana in Plaintiff and Hudgens's cell or in issuing the related misconduct
report, Plaintiff does not appear to allege that either Warner or Getter were
personally involved in any unconstitutional activity, as would be required to

impose liability under § 1983.  *See also Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (albeit involving a motion for summary judgment, "[t]here has been no showing here that Chief Hegarty engaged in any active unconstitutional behavior.")  Since Plaintiff's complaint as to Defendants Warner and Getter does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), it fails "to state a claim upon which relief can be granted" as to the only remaining defendants.  Fed. R. Civ. P. 12(b)(6).[11]

---

[11] Section E.3.a of this report intentionally focuses on Plaintiff's operative pleading – the original complaint, because "'matters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss[.]'"  *U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 405 (6th Cir. 2016) (quoting *Seaton v. TripAdvisor LLC,* 728 F.3d 592, 596 (6th Cir.2013) (internal quotation marks and brackets omitted)).  However, "'documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'"  (*Id*.)  *See also* Fed. R. Civ. P. 12(d) ("Result of Presenting Matters Outside the Pleadings.").  The Court does not view Defendants' five exhibits as requiring conversion of this motion to one for summary judgment, because:  (a) two of them are MDOC Policy Directives of which the Court can take judicial notice (ECF Nos. 31-2, 31-6); (b) one is a Step III report and grievances, and the Undersigned's recommendation is not based upon an alleged failure to exhaust administrative remedies (ECF No. 31-3); (c) another is the Misconduct Report & Hearing Packet, which events are referenced in the complaint and central to Plaintiff's claim (ECF No. 31-4); and, (d) one is a copy of an unpublished decision from this Court (ECF No. 31-5).  (*See also* ECF No. 1, PageID.5-6.)  The same is true of the four exhibits to Plaintiff's May 2020 motion/response:  (a) his declaration (ECF No. 33, PageID.270-272); (b) his statement of disputed factual issues (*id*., PageID.273-275); (c) Hudgens's misconduct and hearing reports and his affidavit from those proceedings, which are either not substantively relied upon in this recommendation (*id*., PageID.278) or are referenced in the complaint and central

b.      **Whether Plaintiff has exhausted administrative remedies as to his claims against Warner and Getter?**

Defendants argue that Plaintiff "failed to exhaust administrative remedies on his claims." (ECF No. 31, PageID.121-131.) "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Motions based on Section 1997e(a) are well-suited to analysis under Fed. R. Civ. P. 56. *See Anderson v. Jutzy*, 175 F. Supp. 3d 781, 787 (E.D. Mich. 2016) (Lawson, J.) ("The summary judgment motion is especially well suited to pretrial adjudication of an exhaustion defense, because proof of lack of exhaustion generally requires resort to matters outside the pleadings, such as affidavits or documentary evidence.") (citing *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir.2010)).

The MDOC's 3-step prisoner/parolee grievance procedure is set forth in MDOC PD 03.02.130 (effective July 9, 2007). (ECF No. 31-2.) For the time period and location at issue in this case, Plaintiff does not seem to have pursued

---

to Plaintiff's claims (*id.*, PageID.277, 279); and, (d) Plaintiff's security reclassification notice, his request for rehearing, and the response, which items are referenced in the complaint and central to Plaintiff's claim (*id.*, PageID.280-282). (*See also* ECF No .1, PageID.5-6.)

such a grievance related to his claims against Defendants Warner and Getter,

notwithstanding the fact that he initiated four grievances concerning MRF between

August 2016 and March 2017.  (ECF No. 31-3, PageID.150-151, 155-158, 159-

165, 166-178, 181-184.)

Perhaps recognizing that Hearing Officer M. Szappan's February 24, 2017 is

"non-grievable" under ¶ F(2) of MDOC PD 03.02.130, Defendants note that "[a]

prisoner aggrieved by a final decision or order of a hearings officer shall file

a motion or application for rehearing in order to exhaust his or her administrative

remedies before seeking judicial review of the final decision or order."  Mich.

Comp. Laws § 791.255(1).  *See also Ayotte v. Stemen*, No. 15-13826, 2019 WL

2219739 (E.D. Mich. Feb. 27, 2019) (Davis, M.J.) (regarding bench trial on

exhaustion of administrative remedies), *report and recommendation adopted*, No.

15-13826, 2019 WL 1349607 (E.D. Mich. Mar. 26, 2019) (Tarnow, J.).  (ECF No.

31-5.)  Defendants also note that the MDOC's Prisoner Discipline Policy Directive

contains provisions corning "misconduct appeals/request for rehearing[,]" MDOC

PD 03.03.105 ¶¶ SSS-XXX (ECF No. 31-6).  (*See* ECF No. 31, PageID.127-128.)

Based on the February 22, 2017 Hearing Investigation Report (ECF No. 31-

4, PageID.191) and the February 24, 2017 hearing report (ECF No. 31-4,

PageID.188), Defendants maintain that "at the misconduct hearing, Meeks did not

claim that Warner or Getter engaged in any misconduct or retaliated against him in

any way."  (ECF No. 31, PageID.128-130.)  Defendants also contends that MRF-

17-03-0375-17z 0375 and MRF-17-03-0383-22A do not involve them (*id.*,

PageID.129, 155-165), and Plaintiff seems to agree (ECF No. 33, PageID.264).

Plaintiff's tardy response addresses this exhaustion argument.  (ECF No. 39,

388-389; *see also* ECF No. 33, PageID.268.)  However, if the Court agrees with

the foregoing recommendation as to Defendants' motion to dismiss, then

Defendants' exhaustion argument, including the concern that the MDOC was not

able to address and review Plaintiff's claim against the MDOC Defendants "on the

merits[,]" (*id.*, PageID.130-131), need not be addressed here.

### F.    Conclusion

In his own motion, Plaintiff requests that the Court grant summary judgment

in his favor.  (ECF No. 33, PageID.260, 269.)  Yet, although he asks the Court to

"grant his claim against Defendants and dismiss the Defendants['] summary

judgment motion[,]" his emphasis is on denying Defendants' motion.  (ECF No.

33, PageID.260, 269, 275.)  The same can be said of his tardy August 25, 2020

response to Defendants' dispositive motion, wherein – in addition to advocating

that his own dispositive motion should be granted – Plaintiff contends that "a jury

trial must be granted to present any and all discovery, documents, evidences or

witnesses to the Court . . . ."  (ECF No. 39, PageID.395.)

However, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphases in original).

Plaintiff's statement that "there are genuine issue[s] of material facts that preclude summary judgment for the Defendants . . . " as to exhaustion (ECF No. 33, PageID.268-269), as well as his "statement of disputed factual issues" and his "list of genuine issue of material facts that require the den[ia]l of Defendants['] motion," (*id*., PageID.273-275), all buttress the conclusion that he seeks denial of Defendants' motion and a trial on the merits of his claims, rather than entry of judgment in his favor as a matter of law.  Accordingly, the Court should **DENY** Plaintiff's motion for summary judgment (ECF No. 33).

## III.    PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  December 30, 2020

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE